## Gugenheim, et al. v. Watkins, et al.

(Decided January 11, 1916.)

### Appeal from Union Circuit Court.

1. Liens—Petition to Enforce Lien for Wages.—Petition to enforce lien for wages under sections 2487 to 2491 Kentucky Statutes must show or allege that it is filed within sixty days from date of the assignment or suspension of the business.

2. Liens—Petition to Enforce Lien for Wages.—Petition to establish lien superior to existing mortgage lien must state or show it is filed within sixty days from date of suspension of the business, and that the claim is for wages coming due to employes within six months before said date of suspension.

3. Liens—Lien of Employes Upon Property of Public Improvement Company.—Employes have the same lien upon the property of a public improvement company under conditions named in section 2490, as under conditions named in section 2487; and the provisions of section 2488 apply to section 2490 the same as to section 2487.

4. Liens—Enforcement of Purchase Money Lien.—Circuit courts can enforce the payment of the purchase price by a resale of the property sold, at a subsequent term to the term at which the sale was confirmed, rights of innocent purchasers not having intervened.

J. W. BLUE, Jr., P. B. MILLER and J. P. HOBSON & SON for appellants.

P. H. WINSTON for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming in part; reversing in part.

On the 20th day of October, 1908, the Crittenden Coal & Coke Company executed to the Marion Bank of Marion, Kentucky, a note for the sum of fourteen thousand four hundred and seventy-eight dollars and eighty-nine cents ($14,478.89), and a mortgage to secure the payment of same upon all of its property, consisting of about three hundred (300) acres of coal, thirty and six-tenths (30.6) acres surface, and tools, piping, etc. The appellants afterwards became the owners of said note and mortgage by assignment from the Marion Bank, and on February 23, 1911, filed their petition in the Union circuit court for the enforcement of their mortgage lien upon the property of the Crittenden Coal & Coke Company.

At the time of the filing of their petition, numerous other creditors of the Crittenden Coal & Coke Company had executions levied upon the property sought to be sold under said mortgage aggregating approximately $22,000.00, and all of its creditors were made parties to the action. A judgment was rendered in June, 1911, in favor of each claimant for the amount of his claim and adjudging that appellants had a prior lien upon the above described property to secure their debt; that the other creditors had liens upon the same property inferior to appellants; that the property could not be divided, but should be sold as a whole. This judgment reserved for future adjudication the relative standing of the liens awarded the creditors other than appellants, and it will be noticed that appellees were not then parties to the action.

By some arrangement between appellants, the other lien creditors and the defendant, not disclosed in the record, this order of sale was not executed until March 3, 1913, and the defendant retained possession of, and operated its mining property until August 17, 1912. On August 22, 1912, appellees, J. W. Watkins, et al., filed a suit in the Union circuit court setting up their claims; asking judgment for the amounts due them, and that they be adjudged a lien upon all of defendant's property to secure the amounts due them, together with all other lien holders of like character of said defendant. On November 6, 1912, this petition of J. W. Watkins, et al.,

was consolidated with the petition of appellants against the defendant, Crittenden Coal & Coke Company. The master, executing the judgment of June, 1911, sold all of defendant's property as a whole on March 2, 1913, and filed his report of sale on March 24, 1913, which report was ordered to lie over until a subsequent day of the same term, when no objections having been filed, the sale was confirmed and a deed made to the purchasers, the appellants.

On February 10, 1913, Charles Heine, et al., filed a petition in the Union circuit court against the same defendant seeking to recover a judgment for the amount due them as laborers, and for a lien on defendant's prop- erty under section 2490 of the Kentucky Statutes. This petition was also consolidated with the petition of ap- pellants against the Crittenden Coal & Coke Company.

Demurrers were entered and sustained to the peti- tions of Watkins, et al., and Heine, et al., but after amendment both the petitions as amended were held to be sufficient.

Answer was filed by appellants to the petitions as amended of Watkins, et al., and Heine, et al. The fol- lowing agreed statement of fact was filed and the case submitted:

"It is agreed by the parties hereto, Sam Gugenheim, &c., J. W. Watkins, &c., and Chas. Heine, &c., that the evidence will show that at the same time Sam Gugen- heim, et al., agreed to a postponement of the sale of the land and property under judgment as secured at the prior June term of this court, 1911, said Gugenheim and others, plaintiffs, knew that Crittenden Coal & Coke Company was operating said mine on said property, and that they made no objections to the said company con- tinuing to operate said mine during the time said sale was postponed, and that plaintiffs, J. W. Watkins, &c., and Chas. Heine, &c., herein worked at said mine after said sale was postponed, and that their claims herein are for said work done by them respectively during said postponement.

"And it is further agreed that the facts will show that Sam Gugenheim, et al., had no contract, agreement or un- derstanding with any of the said employes."

The court adjudged that Watkins, et al., and Heine, et al., had liens superior to appellants' mortgage lien upon the property owned by the defendant on August 17, 1912,

and adjudged a sale to satisfy appellees' claims of a sufficiency of said mining property, which had theretofore been sold and conveyed to appellants. It is from this judgment that appellants appeal.

The following errors are assigned by appellants as reasons for reversing the judgment, to-wit:

1. Appellees have no lien under the Kentucky Statutes, sections 2487 to 2494, inclusive.

2. Even if they have a lien under section 2490, it is not superior to a prior mortgage.

3. Appellees could not have a resale of the land after it had been sold under order of the court, the sale confirmed and the property conveyed to the purchasers at a previous term in consolidated actions to which they were parties.

4. That the Heine petition is insufficient.

We will dispose of the last objection first, because our conclusion in reference thereto eliminates Heine and those joining with him from the further consideration of this appeal.

Their petition fails to show that it was filed within sixty days after the mine was suspended, and also fails to show that the claim was for wages due within six months before that time. Both of these allegations were necessary, and the demurrer should have been sustained to the Heine petition as amended. Bowers, Assignee, &c. v. Huntington Bank, &c., 97 Ky., 294. Kentucky Statutes, section 2491.

We will now consider whether appellees, Watkins, et al, had a prior lien to appellants' mortgage, or any lien, upon the property owned by defendant on the 17th day of August, 1912. These appellees allege in their petition, in substance, that the defendant, Crittenden Coal & Coke Company, owned and operated until August 17, 1912, a coal mine in which they were laborers; that there was due and unpaid them as wages for labor performed within six months prior to August 17, 1912, the aggregate sum of $715.26; that said company suspended operation of said mine on August 17, 1912, and this suit was filed within sixty days of said suspension; that under the Kentucky Statutes, sections 2487 to 2491, inclusive, they have a lien upon all of defendant's property superior to all other liens. Appellants and other lien holders were not made parties to this suit, until at the November term, 1912, when this order was entered:

"By agreement of all parties it is ordered that this cause be consolidated with the cause of Sam Gugenheim, &c. v. Crittenden Coal & Coke Company now pending in this court." Appellants urge that the allegations of this petition are not sufficient to constitute the claims of appellees a lien upon the property; and that even if sufficient to establish liens they were lost by failure of appellees to file the statements with the county clerk required by section 2494. These sections were construed by this court in the case of W. H. Hall & Son v. J. T. Guthrie's Sons, 103 S. W., 721, where it was held that section 2494 refers only to the liens mentioned in section 2492. It was, therefore, not necessary for appellees to have filed statements with the county clerk to protect their liens, if any they had. Section 2487 provides that laborers shall have a lien upon the property of a mine when the property of the company "(1) be assigned for the benefit of creditors, or (2) comes into the hands of any executor, administrator, commissioner, receiver of a court, trustee, or assignee for the benefit of creditors, or (3) in any wise comes to be distributed among creditors, whether by operation of law or by the act of such owner or operator."

The judgment of June, 1911, in this action not only enforced appellants' lien against the company's property, but in addition thereto rendered judgments against the company in the aggregate sum of nearly $22,000.00 to numerous creditors, and adjudged each of them a lien inferior to appellants' lien upon said property; adjudged the property indivisible, and ordered all of the property of the company sold to satisfy the several debts. The property was appraised at a little more than $17,000.00, and brought at the sale only $12,000.00. We are of the opinion that the facts disclosed by this judgment are sufficient to bring this case within the condition upon which appellees under sections 2487 and 2488 would have a lien superior to appellants' lien; that the company's property had "in any wise come to be distributed among creditors, etc." Since a court of equity will regard the substance rather than the mere form, we are sure the chancellor was justified in the conclusion that this company's affairs had come to be distributed among its creditors, and that the Legislature had it in mind to cover just such a case as this when, after enumerating all formal methods of liquidation, it added the clause, "or in

any wise, &c.," to section 2487. Bogard v. Tyler, 55 S. W., 709, cited by appellants, is not *contra* to this view, for it is expressly stated there, when considering this very clause of section 2487, that "we do not mean to decide here that no other case can come within the language of the statute, but merely that the case presented does not," and Grigsbey v. L. & E. Ry., 150 Ky., 557, also cited by appellants, construes sections 2492 and 2494, and has no reference to the sections before us here. But even if the facts here did not give appellees a lien under 2487, they had a superior lien to appellants' mortgage under the plain language of section 2490.

Section 2490 provides:

"When any such company, owner or operator shall suspend, sell or transfer such business, or when the property or effects engaged in such business shall be taken in attachment or execution, so that the business shall be stopped or suspended, the said lien shall attach as fully as is provided in section first of this article (which is section 2487), and in such case may be enforced by proceedings in equity."

Appellees' petition alleges that the defendant company suspended on August 17, 1912, which allegations are not denied, so it must be taken as confessed that this company did cease operation and suspend on that date. Appellees having filed their petition within sixty days of said suspension as provided by section 2491, their liens attached "as fully as is provided in section 2487."

Section 2488 provides "that for wages coming due to employes six months before the property or effects shall in any wise come to be distributed among creditors as provided in section 2487, a lien of such employes shall be superior to any mortgage or other incumbrance theretofore or thereafter created." From which it will be seen that appellees' lien if it had been so acquired under section 2487, would be superior to appellees' mortgage lien, and that section 2490 has provided that when any such company shall suspend, "the said lien shall attach as fully as is provided in section first of this article," which is section 2487. If the lien attaches as fully when the company suspends as when it assigns, it seems clear to us that it was intended by the Legislature that section 2488 shall apply to section 2490 as well as 2487, and that the lien given under section 2490 is a

prior lien to existing mortgages for wages coming due to employes within six months before their suspension.

Hence, it follows that appellees had a prior lien to appellants' mortgage, and there only remains to be decided whether or not the action of the court in ordering a resale of the suspended company's property to satisfy appellees' lien was permissible.

Appellants urge that as the confirmation of the sale to appellants was a final order, the court had not the power to set that sale aside which is, of course, true. The court could not have set that sale aside, nor did it attempt to do so. Neither did the court ignore the sale to appellants. It recognized that sale and ordered a resale to enforce payment of the purchase price. At the time the sale was made to appellants, appellees' claims to a superior lien were pending in the same action. Appellants were permitted to buy and take title to this property without executing any bond or paying the purchase price into court, but the court had not by final or any kind of order adjudged the proceeds of the sale of this property to belong to appellants rather than appellees. The court had ample authority to direct them to pay into court a sufficiency of the purchase price to satisfy liens of appellees adjudged to be superior to their own lien, and the court unquestionably had authority upon their failure to pay said amount into court for the purpose of satisfying appellees' superior liens to order a resale of the land for a failure upon their part to pay the purchase price. This is in effect what the court has done in this case. The appellants have it in their power to prevent the resale of this property by simply paying in court a sufficiency of the purchase price to satisfy appellees' lien, and even if the court should have pursued the proceeds of the sale rather than the land itself, no injury is done to appellants, and we see no reason why the court in this case may not just as well have ordered the sale of the property to satisfy appellees' lien in the first instance, as it did, as to have first ordered appellees to pay a sufficiency of the purchase price for the land into court, and upon their failure so to do to order a resale of the land to enforce the payment by appellants of the purchase price therefor. Page v. Hughes' Heirs, 9 B. Mon., 115; Napper v. Mutual L. Ins. Co., 107 Ky., 134; 24 Cyc., 45.

Wherefore, the judgment of the lower court in so far as it gave a judgment to appellee, Charles Heine and his co-petitioners, and ordered a sale of the property to satisfy their claims, is reversed with directions to sustain a demurrer to said petition; and in so far as said judgment awarded to Watkins, et al., a superior lien for their claims and ordered a resale of the land to satisfy same, the judgment is affirmed.